UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHEILA FITZGIBBONS, RICHARD
ELLISON, and AQUATIC SPORTS, LTD.,

                Plaintiffs,

                                       File No.  1:08-CV-165

v.

                                       HON. ROBERT HOLMES BELL

THE COOK AND THORBURN AND
HANCOCK COUNTY DRAINAGE
DISTRICTS, and the INGHAM COUNTY
DRAIN COMMISSIONER PATRICK E.
LINDEMANN,

                Defendants.

_____/

## **O P I N I O N**

      This matter is before the Court on Defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. No. 11.)  Plaintiffs filed a response to Defendants' motion to dismiss (Dkt. No. 16), and Defendants filed a reply to Plaintiffs' response.  (Dkt. No. 18.)  The Court heard oral argument on November 13, 2008, and permitted the parties to submit supplemental briefs within fourteen days.  Both Plaintiffs (Dkt. No. 24) and Defendants (Dkt. No. 22) submitted supplemental briefs.

      Defendants argue three bases for dismissal of Plaintiffs' claims: (1) lack of subject matter jurisdiction for failure of Plaintiffs to comply with the jurisdictional prerequisites of 33 U.S.C. § 1365, (2) failure to state a claim for which relief can be granted in Count I of

Plaintiffs' complaint due to failure to allege a "discharge" into "navigable waters of the United States" from a "point source" as required by the Federal Clean Water Act, 33 U.S.C. 1251 *et seq.* ("CWA"), and (3) failure to state a claim for which relief can be granted in Counts II and III of Plaintiffs' complaint due to governmental immunity. For the reasons discussed herein, Defendants' motion to dismiss shall be granted for lack of subject matter jurisdiction.

## I.

Plaintiffs own and operate a scuba-diving business on a body of water known as "Cedar Lake." According to Plaintiffs, in 2003, Defendant Ingham County Drain Commissioner realigned certain drains in the Cook and Thorburn and Hancock County Drainage Districts, causing them to discharge into Cedar Lake. Plaintiffs allege that this drainage has resulted in degradation in the quality of the water in Cedar Lake. As a result, Plaintiffs claim that they are no longer able to use the lake for the operation of their business and have suffered damages.

Plaintiffs provided notice to Defendant Ingham County Drain Commissioner ("Commissioner") of their intent to sue pursuant to the citizen-suit provisions of the CWA by letter dated October 13, 2007.[1] The notice letter stated, in part:

[T]he Cook and Thorburn County Drainage Districts, under the jurisdiction of the

_____

[1]Defendants submitted the notice letter as an attachment to their brief in support of their motion to dismiss. (Dkt. No. 15, Defs.'Br. in Supp. of Mot. to Dismiss, Ex. D.) Plaintiffs acknowledge that this letter constitutes the notice that Plaintiffs provided. (Dkt. No. 17, Pls.' Br. in Opp'n to Mot. to Dismiss 8.)

Ingham County Drain Commissioner, (hereinafter collectively referred to as "Commissioner") are engaged in operations directly resulting in numerous discharges of pollutants into the waters of the United States in violation of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251-1376 (hereinafter "CWA") .

Specifically, the Commissioner has violated the CWA by discharging, from numerous point sources throughout the Cedar Lake watershed, pollutants into the waters of the United States without having either applied for or obtained the requisite National Pollutant Discharge Elimination System ("NPDES") permits. . . .

Under the CWA, it is unlawful to discharge pollutants from a "point source" to navigable waters without obtaining and complying with a permit governing the quantity and quality of discharges. . . . Section 301(a) of the Clean Water Act prohibits "the discharge of any pollutants by any person . . ." except as in compliance with, among other sections of the Act, Section 402, the NPDES permitting requirements. . . .

The Commissioner has never applied for any NPDES permits that govern the discharge of nitrogen, phosphorous, nutrients, sediment, debris, pesticides, and other pollutants from those point sources to Cedar Lake.  Nor has the Commissioner been issued any such NPDES permits . . . .

The Commissioner's failure to apply for the necessary NPDES permits has resulted in over 1,381 violations by the Commissioner of the CWA since January 1, 2004. . . . [Plaintiffs] will allege that the Commissioner has been and continues to be required to apply for a NPDES permit for actual and potential discharges of pollutants into the Cedar Lake watershed.  The Commissioner has violated the duty to apply for and has failed to obtain or receive the requisite NPDES discharge permit for point sources within the Cedar Lake watershed every day for at least the last three (3) and 3/4 years, or on 1,381 separate occasions.

In addition to violation of its duty to apply for an NPDES permit, the Commissioner is also in violation of Section 301's prohibition on discharges of pollutants from point sources into Cedar Lake without having first obtained the requisite NPDES permit. . . . This notice of intent to sue puts the Commissioner on notice that [Plaintiffs] allege[] that the Commissioner has violated Section 301(a) on at least 1,381 days for each and every point source within the Cedar Lake watershed. . . .

(Dkt. No. 12, Ex. D.)

3

By reply letter dated November 6, 2007, counsel for the Commissioner notified Plaintiffs that, among other things, "on November 6, 2003 the EPA provided the [Ingham County Drain Commissioner ("ICDC")] a Certificate of Coverage under NPDES General Permit No. MIG619000" pursuant to which the ICDC "is authorized 'to discharge storm water through a separate storm water drainage system to waters of the state.'" (Dkt. No. 12, Ex. E.)

On February 20, 2008, Plaintiffs filed its complaint seeking injunctive relief and damages, based on three counts: (1) violation of the CWA, (2) nuisance (including public and private nuisance, nuisance *per se*, nuisance in fact, and trespass-nuisance), and (3) trespass to land. (Dkt. No. 1, Compl.)

## II.

### A. Count I - Subject Matter Jurisdiction and Failure to State a Claim

Defendants argue that the Court should dismiss Count I of Plaintiffs' complaint, violation of the CWA, for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Defendants argue that (1) the Court lacks subject matter jurisdiction for Count I of the complaint because Plaintiffs have not satisfied the jurisdictional prerequisite of the CWA to provide notice of the alleged violation, and (2) Count I of the complaint fails to state a claim for which relief can be granted because Plaintiffs have not properly alleged that the violation of the CWA at issue involves a "discharge" from a "point source" into a

"navigable water of the United States." Defendants also argue that Counts II and III of the complaint are not valid because Defendants are immune from tort liability. The issue of subject matter jurisdiction must be decided before the Court can determine whether the claims are valid. *Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

A court must dismiss an action when it appears that the court lacks jurisdiction. Fed. R. Civ. P. 12(h)(3). When the defendant challenges subject matter jurisdiction, the plaintiff bears the burden of establishing jurisdiction. *Moir*, 895 F.2d at 269. Plaintiffs' burden to establish federal question jurisdiction and survive a motion to dismiss under Fed. R. Civ. P. 12(b)(1) is "not onerous," as Plaintiffs need only show that "the complaint alleges a claim under federal law, and that the claim is 'substantial.'" *Metro Hydroelectric Co. v. Metro Parks*, 541 F.3d 605, 610 (6th Cir. 2008) (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996)). A federal claim is substantial "'unless prior decisions inescapably render [it] frivolous.'" *Id.* Plaintiffs can survive the motion to dismiss by showing "any arguable basis in law" for the claims in the complaint. *Id.* Moreover, "the court is empowered to resolve factual disputes when subject matter jurisdiction is challenged." *Hollins v. Methodist Healthcare, Inc.*, 474 F.3d 223, 225 (6th Cir. 2007). Plaintiffs' sole asserted basis for federal question jurisdiction is the citizen-suit provision of the CWA, 33 U.S.C. § 1365.[2]

---

[2]The Sixth Circuit has recognized that there is no basis for federal jurisdiction under the CWA for a private right of action outside of § 1365. *Bd. of Trustees v. City of Painesville*, 200 F.3d 396, 400 (6th Cir. 1999).

Defendants argue that Plaintiffs have not satisfied the jurisdictional requirements of

the citizen-suit provision of the CWA because they have not provided Defendants with the

notice required under 33 U.S.C. § 1365. Federal district courts have jurisdiction over citizen

suits enforcing the CWA pursuant to 33 U.S.C. § 1365(a), which provides, in relevant part:

> Except as provided in subsection (b) of this section . . . any citizen may commence a
> civil action on his own behalf--

> (1) against any person (including (i) the United States, and (ii) any other governmental
> instrumentality or agency to the extent permitted by the eleventh amendment to the
> Constitution) who is alleged to be in violation of (A) an effluent standard or limitation
> under this chapter or (B) an order issued by the Administrator or a State with respect
> to such a standard or limitation . . . .

> The district courts shall have jurisdiction, without regard to the amount in controversy
> or the citizenship of the parties, to enforce such an effluent standard or limitation, or
> such an order, or to order the Administrator to perform such act or duty, as the case
> may be, and to apply any appropriate civil penalties under section 1319(d) of this title.

*Id.* In order to bring such a "civil action," however, the citizen-plaintiff must satisfy the

requirement in § 1365(b) to give "notice of the alleged violation (i) to the Administrator, (ii)

to the State in which the alleged violation occurs, and (iii) to any alleged violator of the

standard, limitation, or order . . . ." 33 U.S.C. § 1365(b). The requirements for the contents

of the notice are as follows:

> Notice regarding an alleged violation of an effluent standard or limitation or of an
> order with respect thereto, shall include sufficient information to permit the recipient
> to identify the specific standard, limitation, or order alleged to have been violated, the
> activity alleged to constitute a violation, the person or persons responsible for the
> alleged violation, the location of the alleged violation, the date or dates of such
> violation, and the full name, address, and telephone number of the person giving
> notice.

40 C.F.R. § 135.3; *see* 33 U.S.C. § 1365(b) ("Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation."). This notice requirement is considered a "jurisdictional prerequisite" requiring dismissal of the claim if the requirement is not satisfied. *City of Painesville*, 200 F.3d at 400; *see Hallstrom v. Tillamook County*, 493 U.S. 20, 33 (1989) (requiring dismissal for noncompliance with the timing requirements of a similar notice provision in the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6972 ("RCRA")).

The purpose of the notice requirement is to "allow Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits." *Hallstrom*, 493 U.S. at 29. In addition, "notice gives the alleged violator 'an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit.'" *Id.* (quoting *Gwaltney of Smithfield, Inc. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987)).

Defendants argue that the notice letter is insufficient because it notified Defendants of a violation of the CWA for not applying for or obtaining an NPDES permit. In contrast, the complaint alleges that Defendants violated the CWA by violating an existing NPDES permit. In particular, the complaint alleges that Defendants "failed to employ [best management practices] pursuant to a [maximum extent practicable] standard, as required by the effluent limitations contained within [the permit]" and that Defendants have "effectively violated" the permit by violating certain Michigan water quality standards. (Compl. ¶¶ 181-

84.)  Plaintiffs acknowledge that the notice letter contained "inaccurate allegations," but argue that the notice was sufficient because it contained "substantially or all of the express requirements" of 35 U.S.C. § 1365(b)(1) and 40 C.F.R. § 135.3.  (Pls.' Resp. to Mot. to Dismiss 3.)

The parties disagree as to the legal standard applicable to the contents of a notice under § 1365.  Plaintiffs argue that such notices are adequate if, despite any technical non-compliance, they have provided "substantially complete, if not complete" notice to the appropriate parties, citing *National Wildlife Federation v. Consumers Power Co.*, 657 F. Supp. 989, 998 (W.D. Mich. 1987), *rev'd on other grounds* 862 F.2d 580 (6th Cir. 1988).  Defendants respond that the standard in *National Wildlife Federation* is not consistent with subsequent rulings by the Supreme Court, in *Hallstrom*, and by the Sixth Circuit Court of Appeals decisions interpreting *Hallstrom*, such as *Atlantic States Legal Foundation, Inc. v. United Musical Instruments, U.S.A., Inc.*, 61 F.3d 473 (6th Cir. 1995).  Defendants argue that these latter decisions require "strict" compliance with the requirements of § 1365, an approach contrary to the holding in *National Wildlife Federation*.

In *National Wildlife Federation*, the plaintiff sent a letter notifying the defendant of its intent to sue for "discharging pollutants . . . without a permit . . . in violation of § 301(a) of the Clean Water Act."  *Nat'l Wildlife Federation*, 657 F. Supp. at 998.  The court held that, "although it could have been more specific, the notice satisfied the regulatory requirements."  *Id.*  Because plaintiff's notice was "timely and substantially complete, if not

8

complete," and because "plaintiff has sufficiently alleged and established the actual notice that the statute and the regulations require" the court held that plaintiff had complied with the notice requirements of § 1365. *Id.* Plaintiffs assert that their notice letter is sufficient because, like the notice in *National Wildlife Federation* of a violation of section 301(a), Plaintiffs' letter notified Defendants that they were in violation of the CWA generally, referring to the second paragraph of the notice letter which states that Defendants were responsible for "numerous discharges of pollutants into the waters of the United States in violation of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251-1376 . . . ." (Dkt. No. 12, Ex. D.) However, even if this Court were to accept that a general notice of a violation of "Section 301(a)" of the CWA is sufficient, as the court found in *National Wildlife Federation*, the second paragraph of Plaintiffs' notice cites the CWA generally, without additional specificity. Providing a general notice of a violation of the CWA does not provide "sufficient information to permit the recipient to identify the *specific standard, limitation, or order* alleged to have been violated . . ." 40 C.F.R. § 135.3 (emphasis added). Moreover, unlike *National Wildlife Federation*, this is not a case where the plaintiffs provided a non-specific notice of violation of the CWA and later asserted more specific claims in their complaint that were consistent with the notice. After making a passing reference to the CWA generally, the rest of Plaintiffs' notice letter focuses on a specific violation of the CWA, *i.e.* the discharge of pollutants without applying for or obtaining a National Pollutant Discharge Elimination System ("NPDES") permit as required under 33

U.S.C. § 1311. In contrast, Plaintiffs' complaint focuses on an entirely different claim, violation of the NPDES permit issued to Defendants. There is no suggestion in Plaintiffs' notice letter of an intent to sue for violation of an existing NPDES permit; there is no mention in the notice letter of violation of water quality standards (Compl. ¶¶ 183-84), or of failure to implement "best management practices" under a "maximum extent practicable" standard (Compl. ¶¶ 180-81). Thus, even under the standard set forth in *National Wildlife Federation*, Plaintiffs' notice letter fails to satisfy the requirements of § 1365; Plaintiffs' notice was not even a "substantially complete" notice of violation of the NPDES permit held by Defendants.

The opinions in *Hallstrom* and *United Musical Instruments* provide additional grounds for finding that Plaintiffs' notice letter is insufficient. In *Hallstrom*, the Supreme Court analyzed a similar 60-day notice provision in the Resource Conservatory and Recovery Act of 1976, 42 U.S.C. § 6972 ("RCRA").[3] *Hallstrom*, 493 U.S. at 20. The Supreme Court held that a court did not have discretion to retain an action where the plaintiff has not complied with the 60-day notice requirement. *Id.* at 33. The statutory notice provisions must be interpreted strictly in accordance with their terms, and a court must dismiss the action if the plaintiff has not complied. *Id.* Thus, where the plaintiffs provided notice to the defendants

---

[3]The citizen-suit notice provision in the RCRA at issue in *Hallstrom* is substantively the same as the notice provision in the CWA. *Frilling v. Village of Anna*, 924 F. Supp. 821, 832 (S.D. Ohio 1996); *see Hallstrom*, 493 U.S. at 23 n.1 (the RCRA and the CWA notice provisions were modeled after the notice provision in the Clean Air Act, 42 U.S.C. § 7604); *Greene v. Reilly*, 956 F.2d 593, 594 (6th Cir. 1992) (applying the holding of *Hallstrom* to the CWA).

less than sixty days before filing its court action, the district court was required to dismiss the action.  *Id.* at 23-24.

In *United Musical Instruments*, the Sixth Circuit applied the holding of *Hallstrom* to dismiss a claim based on the citizen-suit notice provision in the Emergency Planning and Community Right-to-Know Act of 1986, 42 U.S.C. §§ 11001-11050 ("EPCRA").[4]  *United Musical Instruments*, 61 F.3d at 473.  The notice at issue in *United Musical Instruments* mentioned violations occurring in the years 1987-1990, as well as other "violations not yet known."  *Id.* at 478.  In the complaint, however, the plaintiff included a violation occurring in 1991.  *Id.*  The Sixth Circuit held that the district court did not have jurisdiction over the 1991 violation because notice of "violations not yet known" was not sufficient.  *Id.*  The court reasoned that:

> One of the important purposes of the notice requirement under environmental statutes is to facilitate "dispute resolution by EPA negotiation [and thereby] reduce the volume of costly litigation." . . .  Here, [plaintiff's] failure to include the 1991 violation in its notice may have contributed to the EPA's decision not to act.  Moreover, the vague warning of other possible claims failed to inform [defendant] of the additional alleged violation or even *the specific EPCRA reporting requirement involved*.

*Id.* at 478 (quoting *Walls v. Waste Resource Corp.*, 761 F.2d 311, 317 (6th Cir. 1985)) (citations omitted; emphasis added).  Plaintiffs contend that the notice letter provided Defendants with notice of the activities alleged to be a violation, the location of the alleged

_____

[4]The citizen-suit notice provision in the EPCRA is substantively the same as the notice provision in the CWA.  *Frilling v. Village of Anna*, 924 F. Supp. 821, 832 (S.D. Ohio 1996); *see Hallstrom*, 493 U.S. at 23 n.1 (the EPCRA and the CWA notice provisions were modeled after the notice provision in the Clean Air Act, 42 U.S.C. § 7604).

violation, and the relevant dates, and that "by constructive implication" Defendants "knew or should have known" that what Plaintiffs meant is that Defendants were violating their NPDES permit.  (Dkt. No. 17, Pls.' Br. in Opp'n to Mot. to Dismiss 10.)  However, constructive notice is not sufficient.  *Walls*, 761 F.2d at 317.  *See also Greene*, 956 F.2d at 594 (notice of the alleged violations is not sufficient without notice of intent to sue). Moreover, Plaintiffs' repeated and admittedly incorrect allegations in the notice that Defendants did not have an NPDES permit for the type of discharges at issue, in addition to the failure to specify any violations of that permit in the notice, may have, as the court reasoned in *United Musical Instruments*, contributed to any failure by Defendants, or by the EPA, to address any possible issues related to such discharges.  To allow Plaintiffs to proceed in this action would thwart the purpose of the notice requirement to give Defendants an opportunity to rectify any violations of the NPDES permit alleged in the complaint.  *See Hallstrom*, 493 U.S. at 29 (identifying the purpose of such notice requirements).

Finally, the court in *United Musical Instruments* indicated that the notice in that case was not sufficient, in part, because it did not identify the "specific [statutory] requirement involved."  *United Musical Instruments*, 61 F.3d at 478.  The Court notes that there is disagreement among the courts as to how specific a notice letter must be with respect to providing "sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated," as required by 40 C.F.R. § 135.3. *Compare Frilling v. Village of Anna*, 924 F. Supp. 821, 833 (S.D. Ohio 1996) (holding that

*United Musical Instruments* requires that "plaintiffs bringing suit under 33 U.S.C. § 1365 must provide notice of the *specific* limitations, standards, or orders alleged to be violated") *with Public Interest Research Group of New Jersey, Inc. v. Hercules, Inc.*, 50 F.3d 1239, 1251-52 (3d Cir. 1995) (holding that notice of violations of "the same type" or that are "directly related" is sufficient); *Carney v. Gordon County*, No. CIVA 4:06CV36 RLV, 2006 WL 4347048, at *3-4 (N.D. Ga. Sept. 12, 2006) (holding that a notice alleging that either a permit has not been obtained or it is being violated is sufficient because "40 C.F.R. § 135.3 . . . itself uses the language '*sufficient information* to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated,' etc. (emphasis added). Thus, even strict compliance would seem not to require specific information as to the alleged violation."). In *Sierra Club Ohio Chapter v. City of Columbus*, 282 F. Supp. 2d 756 (S.D. Ohio 2003), the district court found that a notice given pursuant to the CWA was insufficient where it did not specify "which of the five subparagraphs [of the NPDES permit] is or are alleged to have been violated." *Id.* at 768.  Under the facts of the instant case, however, it is not necessary for the Court to resolve this issue.  The Court finds that Plaintiffs' notice is not sufficient because it notified Defendants of one violation (failure to apply for or obtain an NPDES permit), but Plaintiffs sued Defendants for another (violation of an existing NPDES permit).  This does not satisfy the requirements of § 1365 and 40 C.F.R. § 135.3, under either *National Wildlife Federation* or *United Musical Instruments*.  Because Plaintiffs did not comply with the notice requirements of § 1365 of the CWA, the Court must dismiss Count I of Plaintiffs' complaint.  *Hallstrom*, 493 U.S. at 33.

Defendants asserted other grounds for dismissal of Count I of Plaintiffs' complaint, such as failure to state a claim for which relief can be granted.  Because the Court is dismissing Count I for the reasons stated, the Court declines to rule on those grounds.

**B. Counts II and III**

In Counts II and III, Plaintiffs have asserted state law claims of trespass and nuisance. Having found that the Court does not have subject matter jurisdiction over Count I of the complaint, the Court discerns no  basis for which it has original jurisdiction over Counts II and III, and declines to exercise supplemental jurisdiction over these claims. 28 U.S.C. § 1367(c)(3); *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 583 (6th Cir. 2007).

Dated: <u>December 8, 2008</u>                    /s/ Robert Holmes Bell
                                                 ROBERT HOLMES BELL
                                                 UNITED STATES DISTRICT JUDGE

14